# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| GENERAL POWER PRODUCTS, <br> Plaintiff <br><br> vs <br><br> BRADLEY S. NOLAN, et al., <br> Defendants | Case No. 1:09-cv-118 <br> Weber, J. <br> Hogan, M.J. <br><br><br> **REPORT AND** <br> **RECOMMENDATION** |

Plaintiff General Power Products (GPP) brings this action against defendants Bradley S. Nolan (Nolan) and Tufco Mid-Atlantic Flooring, Inc. (Tufco) alleging claims of breach of contract, unjust enrichment, and a violation of the Ohio Uniform Commercial Code. Defendants counterclaim alleging claims of breach of contract, unjust enrichment, and interference with contractual relations. This action was initially filed in the Hamilton County, Ohio Court of Common Pleas, but removed by defendants to this federal court under the diversity jurisdiction of the Court. *See* 28 U.S.C. §§ 1332, 1441. This matter is now before the Court on plaintiff's motion for summary judgment (Doc. 29), defendants' response in opposition thereto (Doc. 34), and plaintiff's reply memorandum. (Doc. 36).

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party must demonstrate the absence of genuine disputes over facts which, under the substantive law governing the issue, could affect the outcome of the action. *Celotex Corp.*, 477 U.S. at 323.

In response to a properly supported summary judgment motion, the non-moving party "is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *see also Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). The Court must evaluate the evidence and all inferences drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Satterfield v. Tennessee,* 295 F.3d 611, 615 (6th Cir. 2002); *Little Caesar Enterprises, Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a prima facie case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). A principal purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex,* 477 U.S. at 323-24. The moving party need not support its motion with evidence disproving the opposing party's claims. Rather, the moving party need only point out there is an absence of evidence supporting such claims. *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996) (citing *Celotex Corp.,* 477 U.S. at 325). Nor must the Court search the entire record for material issues of fact. *Street*, 886 F.2d at 1479-80. The court need only determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

# I. FACTS

This case arises out of the sale of APP6000 model generators from GPP to Nolan and Tufco. GPP asserts that between September 3 and September 12, 2008, it sold 274 generators to Nolan and Tufco at a price of $320.00 each for which GPP was never paid. Defendants deny they owe any money to GPP for the generators because GPP failed to compensate defendants for the extensive marketing and sales efforts they took to liquidate some 16,000 generators in GPP's inventory or for providing GPP with proprietary information, including the identity of potential customers, which facilitated the sale of generators to various corporations and individuals. The parties present the following evidence.

In September 2006, Daniel Lehr, President of GPP, advised Nolan by email that GPP had 19,000 generators in stock in its Cincinnati warehouse. The email also included information on the generators, including a power point presentation and pricing information. (Doc. 34, Exh. 1). Nolan testified that in the fall of 2006, he and Lehr reached two agreements about compensating Nolan for his assistance in liquidating the generators. Under the first agreement, GPP would sell the generators to Nolan for a set price, then Nolan would resell the generators at a higher price to a second buyer and would keep the excess over the original purchase price paid by Nolan. (Doc. 34, Exh. 2, Nolan Depo. at 22). Under the second agreement, Nolan would be paid a commission for connecting Lehr with a buyer for the generators. *Id.* Nolan testified that they did not work out the specific numbers and "[i]t just depended on each deal, I guess." *Id.*

In November 2006, GPP provided Nolan with marketing materials and sample generators for Nolan to use in marketing the generators to prospective buyers. (Doc. 34, Exh. 3). Nolan testified that once he identified a prospective buyer, he would call GPP and inform Lehr he was

working with a potential buyer. (Doc. 34, Exh. 2, Nolan Depo. at 58-59). GPP agreed that if such a potential buyer called GPP directly, Lehr would "tell them that, 'No, you have to deal with Brad Nolan on that particular sale.'" *Id.* While Lehr testified he did not recall a specific conversation with Nolan on this latter arrangement, he stated that this "would be a very typical type of conversation that would go on between anybody that's representing somebody else's product. . . ." (Doc. 34, Exh. 4, Lehr Depo. at 71-72). Lehr admitted that Nolan was representing GPP with regard to the APP6000 Generators. (*Id.* at 72). Nolan testified that he marketed the generators to many individuals and various corporations including Wal-mart and Sam's Club. (Doc. 34, Exh. 2, Nolan Depo. at 24-31).

In support of their claim of intentional interference with defendants' prospective contractual relationships, defendants cite to the deposition testimony of Nolan and Lehr. Nolan testified that he put Lehr in contact with an individual by the name of Jay Hanson: "I gave him Jay Hanson's name and number and our agreement was that if anyone contacts him he would contact them direct, the people I'm working with, and he would then tell them they have to deal through me." (Doc. 34, Exh. 2, Nolan Depo. at 58-59). Lehr testified that he paid Hanson or one of Hanson's partners compensation for putting Lehr in touch with the buyer of 500 generators. (Doc. 34, Exh. 4, Lehr Depo. at 48-52). While defendants in their memorandum in opposition state that they anticipate that outstanding written discovery will likely establish additional facts in support of their tortious interference with contractual relationships with third parties (Doc. 34 at 8), defendants have produced no additional evidence in support of their claims.[1]

---

[1] In their memorandum in opposition to the motion for summary judgment, defendants assert that GPP did not provide certain discovery to which it was entitled. The discovery issue was heard by the undersigned who ordered GPP to produce certain documents to defendants by November 30, 2009. (Doc. 32). To date, defendants have not

4

Defendants also cite to the deposition testimony of Heath Danford, a third party liquidator, to confirm the existence of an agreement between Nolan and Lehr that "GPP would not poach potential buyers identified by Nolan." (Doc. 34 at 6, Exh. 5, Danford Depo. at 19-21). Danford testified that he was present during a telephone conversation between Nolan and Lehr where Nolan conveyed information about certain purchasers. Danford testified, "I did hear Dan–or Brad ask the question, 'Now you do not know this company, have been contacted by this company, or you–you don't know this individual,' to which Dan responded, 'No I do not. No, I have not.'" (Doc. 34, Exh. 5, Danford Depo. at 25).

Plaintiff GPP presents three separate invoices and bills of lading showing the sale of a total of 274 generators from GPP to Brad Nolan and Tufco between September 3 and 26, 2008. (Doc. 29, Exh. A). The September 3, 2008 invoice is addressed to "Brad Nolan, Tufco, 130 Commerce Blvd., Frankfort, KY 40601." (Doc. 29, Exh. A). The remaining two September 26, 2008 invoices are each addressed to "Brad Nolan, 130 Commerce Blvd., Frankfort, KY 40601." *Id.* Each invoice identified the price of each generator to be $320.00. *Id.* Nolan testified that during September 2008, he purchased some generators from GPP. (Doc. 29, Exh. B, Nolan depo. at 87-88).[2] Defendants admit that Tufco acquired 274 generators from GPP and that defendants have not paid for the generators. (Doc. 4 at ¶¶3-5, 7, 9, 11, 13; Doc. 34 at 1).

**I. Plaintiff GPP is entitled to summary judgment on its UCC claim.**

GPP asserts it is entitled to recover the sales price of the 274 generators sold to defendants under the Ohio Uniform Commercial Code, Ohio Rev. Code § 1301.01 et seq.

---

supplemented their memorandum opposing summary judgment with any additional discovery materials.

[2]Nolan's testimony is not specific as to quantity or price on this purchase.

Revised Code Sections 1302.01 to 1302.98 apply to "transactions in goods," including contracts for the sale of goods. *See* Ohio Rev. Code § 1302.02. "A commercial transaction is subject to the provisions of R.C. 1302 et seq. when there is a buyer, a seller, goods, and a contract to sell the goods." *Overly v. Omni Helicopters, Inc.*, No. H-84-5, 1984 WL 14303, at *3 (Ohio App. 6th Dist. Nov. 9, 1984). Goods are "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities, and things in action." Ohio Rev. Code § 1302.01(A)(8). Here, GPP seeks to recover payment for 274 generators that it sold to defendants. Since the generators are "movable," the Ohio Uniform Commercial Code applies to the transactions at issue.

GPP seeks recovery pursuant to Ohio Rev. Code §§ 1302.83 and 1302.84. Ohio Rev. Code § 1302.83 (UCC 2-709) provides in relevant part, "When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under section 1302.84[3] of the Revised Code, the price . . . of goods accepted. . . ." Ohio Rev. Code § 1302.83(A)(1).

In this case, there is no dispute that defendants received but did not pay for the 274 generators sold by GPP. The evidence shows that both defendants received a total of 274 generators priced at $320.00 each from GPP between September 3 and 26, 2008. (Doc. 29, Exh. A; Doc. 4 at ¶¶3-5, 7, 9, 11, 13; Doc. 34 at 1; Doc. 29, Exh. B, Nolan depo. at 87-88). It is undisputed that defendants neither paid for nor rejected the generators. *Id.* The only defense to

---

[3]"Incidental damages to an aggrieved seller include any commercially reasonable charges, expenses, or commissions incurred in stopping delivery, in the transportation, care, and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach." Ohio Rev. Code § 1302.84.

6

the breach of contract claim made by defendants is that GPP has not established a breach or non-payment by any *particular* defendant because the invoices presented by GPP indicate some generators were sold to Nolan and some were sold to Tufco. (Doc. 34 at 4).[4] Yet, defendants admit in their answer that Tufco acquired 274 generators from GPP and that they have not paid for the generators. (Doc. 4 at ¶¶3-5, 7, 9, 11, 13; Doc. 34 at 1). Nolan also admitted at his deposition that during September 2008, he purchased generators from GPP and refused to pay for them. (Doc. 29, Exh. B, Nolan depo. at 87-88). Since the evidence demonstrates no genuine issue of material fact that Nolan and Tufco failed to pay for the 274 generators received from GPP, GPP is entitled to summary judgment on its UCC claim. Accordingly, it is recommended that GPP's motion for summary judgment on its UCC claim be granted.

## II. Plaintiff GPP is not entitled to summary judgment on defendants' breach of contract claim.

Plaintiff GPP contends it is entitled to summary judgment on defendants' breach of contract claim because a term of the alleged contract–the amount of commission to be paid to Nolan–was never agreed upon. GPP argues that in the absence of evidence showing the parties agreed to the specific amount of a "blanket" commission to Nolan on the sale of the generators, there was no meeting of the minds between the parties and therefore no valid contract. (Doc. 29 at 7).

Defendants contend there was an implied contract between the parties. Defendants argue that the written emails from Lehr coupled with Nolan's deposition testimony and the parties' course of dealings establish an implied contract under the circumstances.

---

[4] While defendants assert that "GPP has failed to so much as allege that Nolan was a merchant for the purposes of the UCC" (Doc. 34 at 3), defendants have failed to allege or argue how this is relevant to GPP's UCC claim or to present any legal authority in support of its assertion. See S.D. Ohio Civ. R. 7.2(a)(1).

The "[e]ssential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Kostelnik v. Helper*, 96 Ohio St.3d 1, 3, 770 N.E.2d 58, 61 (2002) (internal quotation marks and citations omitted). "A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Id.* Ohio law provides for three types of contracts: express, implied in fact, and implied in law:

> An express contract occurs when the parties' assent to a contract's terms is expressed through an offer and acceptance. . . . A contract implied in fact occurs when a meeting of the minds is demonstrated by surrounding circumstances, allowing a factfinder to infer the existence of a contract by tacit understanding. . . . A contract implied in law occurs when there is no meeting of the minds, and the law creates an obligation on a person who received a benefit and would be unjustly enriched by the benefit.

*United National Ins. Co. v. SST Fitness Corp.*, 309 F.3d 914, 919 (6th Cir. 2002) (quoting in part *Legros v. Tarr*, 44 Ohio St.3d 1, 6, 540 N.E.2d 257, 263 (1989))(other citations omitted).

In this case, defendants assert there was an implied contract between GPP and Nolan to compensate Nolan for his marketing and other efforts to find potential buyers for GPP's inventory of generators. An implied contract generally arises from the provision of services or materials by one party to another under circumstances where payment is typically made for the services or materials. *United National Ins.*, 309 F.3d at 919 (citing Ohio law). "To prove the existence of an implied contract, services must be rendered, work performed, or materials furnished by one party to another under such circumstances that the receiving party knew, or should have known, that such services were rendered with the expectation of being paid on the basis of their reasonable worth." *Evans v. Rizzo*, No. 9-96-26, 1996 WL 479565, at *2 (Ohio App. 3d Dist. Aug. 20, 1996) (citing *Terex Corp. v. Grim Welding Co.*, 58 Ohio App.3d 80, 82,

8

568 N.E.2d 739, 741 (1989)). Defendants must show that GPP "either requested or assented to such conduct under conditions precluding an inference that [Nolan] acted gratuitously." *Lucas v. Costantini*, 13 Ohio App.3d 367, 369, 469 N.E.2d 927, 930 (Ohio App. 12th Dist. 1983) (citing *Columbus, Hocking Valley & Toledo Ry. Co. v. Gaffney*, 65 Ohio St. 104, 61 N.E. 152 (1901)).

Here, viewing the evidence in the light most favorable to defendants, the record shows that Nolan's services–marketing and finding potential buyers for GPP's generators–were rendered on behalf of GPP not gratuitously, but with the expectation of being compensated for those services. GPP's Lehr admitted that Nolan was representing GPP in the sale of the excess generators. Lehr sent marketing materials and sample generators to Nolan to assist in this endeavor. Nolan testified that he marketed GPP's generators to potential buyers and was to be paid a commission for his services. Both Nolan and Danford[5] testified that if one of Nolan's potential buyers contacted Lehr, Lehr would advise the buyer to deal with Nolan. While Lehr could not recall a specific conversation with Nolan, he admitted that Nolan's description of this agreement was "typical" where one party represented another's product. (Doc. 34, Exh. 4, Lehr Depo. at 71-72). When viewing the evidence in the light most favorable to defendants as the Court must do on summary judgment, defendants have come forward with sufficient evidence from which a jury could infer that Nolan's services were not provided gratuitously to GPP, but with the agreement he would be compensated.

---

[5]GPP objects to Danford's testimony as hearsay. The Court disagrees. Danford's testimony concerning the phone call between Nolan and Lehr is not being offered for the truth of the matter asserted, *i.e.*, whether or not Mr. Lehr actually knew the company or had been contacted by the company, but to establish that Nolan and Lehr acted in accordance with a course of conduct consistent with the existence of an agreement whereby Nolan would receive a commission for identifying prospective buyers not already known to Lehr.

The fact that the term of compensation is unspecified does not change the Court's finding that there is sufficient evidence of an implied contract. For a contract to exist, the parties must have a meeting of the minds as to the essential terms of the contract. *Kostelnik v. Helper*, 96 Ohio St.3d 1, 3-4, 770 N.E.2d 58, 61 (2002) (citing *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369, 575 N.E.2d 134, 137 (1991)). *See also CSX Transportation, Inc. v. Occidental Chemical Corp.*, 130 F. Supp.2d 936, 941 (S.D. Ohio 2001) (citing *Nilavar v. Osborn*, 127 Ohio App.3d 1, 711 N.E.2d 726, 732 (1998)), *aff'd*, 65 Fed. Appx. 963 (6th Cir. 2003). Where, as here, the contract is not one for the sale of goods, "the essential terms of a contract are the parties to the contract and its subject matter." *CSX Transportation*, 130 F. Supp.2d at 941 (citing *Nilavar*, 127 Ohio App.3d at 13, 711 N.E.2d at 734). Courts consider the terms of a contract to be sufficiently certain where they "provide a basis to determine a breach and a remedy." *CSX Transportation, Inc. v. Occidental Chemical Corp.*, 65 Fed. Appx. 963, 966 (6th Cir. 2003) (citing *Nilavar*, 127 Ohio App.3d at 13, 711 N.E.2d at 734). "[T]he fact that certain terms remain to be negotiated or determined by judicial resolution does not create an indefiniteness that necessarily invalidates the contract." *Tippen v. Mead Corp.*, Nos. 18380, 1999 CV 02982, 2000 WL 1838758, at *4 (Ohio App. 2d Dist. Dec. 15, 2000) (citing *Mr. Mark Corp. v. Rush, Inc.*, 11 Ohio App.3d 167, 169, 464 N.E.2d 586, 589 (Ohio App. 8th Dist. 1983)). Thus, "the failure to specify the price or amount of compensation for services does not render a contract for services void for uncertainty." *Euclid Asphalt Paving Co., Inc. v. Mount Zion Fellowship Church*, No. 2004-L-175, 2005 WL 3610463, at *5 (Ohio App. 11 Dist. 2005) (citing *Nilavar*, 127 Ohio App.3d at 13, 711 N.E.2d at 734; *Smitko v. Schiano*, No. 1370, 1988 WL 64771 (Ohio App. 11th Dist. June 17, 1988)). Under Ohio law, "when a person knowingly

and voluntarily accepts work performed by another who is reasonably expecting to be paid for such work, such acceptance will imply a promise to pay the reasonable value of said performance." *Evans v. Rizzo*, No. 9-96-26, 1996 WL 479565, at *2 (Ohio App. 3d Dist. Aug. 20, 1996). *See also Terex Corp. v. Grim Welding Co.*, 58 Ohio App.3d 80, 82, 568 N.E.2d 739, 741 (Ohio App. 9th Dist. 1989) ("To show a contract implied in fact, services must be rendered, work performed or materials furnished by one party for another under such circumstances that the party to be charged knew or should have known that the services were given with the expectation of being paid on the basis of their reasonable worth.").

In this case, the fact that the compensation term is unspecified does not defeat defendants' implied contract law claim. Defendants have presented sufficient evidence of the essential elements of an implied contract in this matter, including the identity of the parties, a meeting of the minds, and an identification of the subject matter such that a reasonable jury could find an implied contract existed between GPP and Nolan. Therefore, the absence of evidence showing an agreed amount of compensation does not entitle GPP to summary judgment on defendants' contract claim. The parties may present evidence at trial establishing the compensation owed to Nolan for his services. GPP's motion for summary judgment on defendants' breach of contract claim should therefore be denied.

### III. Plaintiff GPP is not entitled to summary judgment on defendants' claim for intentional interference with prospective contractual relations.

Plaintiff GPP seeks summary judgment on defendants' claim for intentional interference with prospective contractual relations. To establish this claim, defendants must show GPP either (1) induced or otherwise caused a third person not to enter into or continue a prospective relation,

11

or (2) prevented the other from acquiring or continuing the prospective relation, which resulted in pecuniary loss to defendants. *See Gray-Jones v. Jones*, 137 Ohio App.3d 93, 101, 738 N.E.2d 64, 70 (Ohio App. 10th Dist. 2000).

Here, GPP points to paragraphs 17 through 19 of defendants' counterclaim and contends that defendants have failed to produce any evidence that Jim McMillan or Blue Water Trading actually purchased any of the generators from GPP or that GPP paid any commission to McMillan or Blue Water Trading for sales of generators as pled in the counterclaim. (Doc. 36 at 5).[6] On summary judgment, however, defendants present evidence that GPP interfered with defendants' prospective contractual relations with Jay Hanson, a different potential buyer. Nolan testified that he gave Lehr Jay Hanson's name and number. (Doc. 34, Exh. 2, Nolan Depo. at 58-59). Lehr then spoke with Hanson and consummated a large sale of generators. Lehr testified that he paid Hanson or one of Hanson's partners compensation for putting Lehr in touch with the buyer of 500 generators. (Doc. 34, Exh. 4, Lehr Depo. at 48-52). This evidence, if ultimately believed by the jury, could establish the elements of defendants' claim for intentional interference with prospective contractual relations in this case. Accordingly, GPP's motion for summary judgment on this claim should be denied.

### IV. Plaintiff GPP is not entitled to summary judgment on defendants' unjust enrichment claim.

While GPP generally requests it be granted summary judgment on its claims and defendants' counterclaims (Doc. 29 at 11; Doc. 36 at 6), it has not presented any evidence or

---

[6]The allegations contained in defendants' counterclaim concerning McMillan and Blue Water Trading were based on information and belief. (Doc. 4, ¶¶17, 18).

argument specifically addressing defendants' unjust enrichment claim. Therefore, to the extent GPP's motion for summary judgment may be construed as seeking summary judgment on defendants' unjust enrichment claim, the motion should be denied.

## IT IS THEREFORE RECOMMENDED THAT:

1. Plaintiff GPP's motion for summary judgment on its UCC claim be granted.

2. Plaintiff GPP's motion for summary judgment be denied in all other respects.

Date: 1/21/10

Timothy S. Hogan
United States Magistrate

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

GENERAL POWER PRODUCTS,  
    Plaintiff

vs

BRADLEY S. NOLAN, et al.,  
    Defendants

Case No. 1:09-cv-118  
Weber, J.  
Hogan, M.J.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).